IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GWEN ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:14-CV-144-WKW |
| | ) | [WO] |
| DOLGENCORP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gwen Anderson alleges that, in violation of 42 U.S.C. § 1981, racial discrimination interfered with her right to enter into a contractual relationship with Defendant Dolgencorp, LLC, for the purchase of merchandise. Supplemental state-law claims accompany the § 1981 claim.  Before the court is Defendant Dolgencorp, LLC's motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (Docs. # 7, 8.)  Ms. Anderson filed a response in opposition (Doc. # 12), to which Dolgencorp filed a reply (Doc. # 13).  After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion is due to be granted as to the § 1981

---

[1] The Complaint names Dollar General Stores Corp.; however, Dollar General represents that its correct legal name is Dolgencorp, LLC.  The caption is amended to reflect Defendant's correct legal name.

claim and that the supplemental state-law claims are due to be dismissed without prejudice.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367.  Personal jurisdiction and venue are not contested.

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.  FACTS

The facts essential to resolution of the Rule 12(b)(6) motion to dismiss, construed in Ms. Anderson's favor, are as follows.  Ms. Anderson, a Geneva County resident who is African-American, went shopping at the Dollar General

store in Hartford, Alabama, on July 13, 2013. After selecting her merchandise, Ms. Anderson stood in the check-out line. When Ms. Anderson made it to the front of the line, the clerk rang up Ms. Anderson's items, and Ms. Anderson handed the clerk her EBT card for payment.[2] The card was "torn from wear and would not swipe," and the clerk swiped the card several times. (Compl. ¶¶ 11–12.) The clerk then remarked to Ms. Anderson that "she may need to get a new card." (Compl. ¶ 13.) The store manager, who is white, overhead the clerk's remark, and yelled, "[O]r get a job." (Compl. ¶ 14.) The manager did not know Ms. Anderson, but continued to rant that, if she (Ms. Anderson) had "used the card that long to tear it, she should really get a job!" (Compl. ¶ 16.) Ms. Anderson, who by that time was very upset and embarrassed, "left the store in tears."[3] (Compl. ¶ 19.)

Ms. Anderson alleges that Dolgencorp violated § 1981 by subjecting her to a racially discriminatory shopping experience that denied her contractual rights as a customer.[4] She also brings supplemental state-law claims for negligent hiring and

---

[2] EBT stands for "electronic benefit system." An EBT card, which operates similar to a debit card, is a device for qualifying low-income recipients to pay for food stamp purchases. *See* 7 U.S.C. § 2011(a) (establishing the Food Stamp Program "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households"); *see also* 7 U.S.C. § 2016(h) (providing for the implementation of the EBT system).

[3] There are no allegations indicating whether Ms. Anderson completed her transaction before leaving the store. The omission of these allegations is discussed later in this opinion.

[4] In the caption of the Complaint, Ms. Anderson attempts to join fictitious plaintiffs. (Compl. ¶¶ 23, 24.) "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports &*

retention, as well as for intentional infliction of emotional distress.   Dolgencorp has responded with a motion to dismiss for failure to state a claim.

## IV. DISCUSSION

Dolgencorp's motion to dismiss challenges the Complaint's three claims as deficient under Rule 12(b)(6).  For the reasons to follow, the § 1981 claim fails to state a claim upon which relief can be granted, and the court declines to retain discretionary supplemental jurisdiction over the state-law claims.

## A.   <u>Section 1981 Claim (Count One)</u>

Section 1981 grants "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."   *Id.*   It does not provide, however, "'a general cause of action for all racial harassment that occurs during the contracting process,'" nor is § 1981 "a general civility code."   *Lopez v. Target Corp.*, 676 F.3d 1230, 1234–35 (11th Cir. 2012) (quoting *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 892 (11th Cir. 2007)).  As set out in *Lopez*, "the elements of a cause of action under § 1981 are:  (1) that the plaintiff is a member of a racial minority; (2) that the defendant  intended  to  discriminate  on  the  basis  of  race;  and  (3)  that  the

---

*Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)).  No demonstration has been made that an exception to that rule applies in this case.  The fictitious-party claims are not properly before the court and are disregarded.

discrimination concerned one or more of the activities enumerated in the statute." 676 F.3d at 1233.

Dolgencorp does not dispute that Ms. Anderson, an African-American female, is a member of a racial minority and that, therefore, the Complaint satisfies the first element.   The second and third elements are at issue, however. Dolgencorp contends that the § 1981 claim cannot survive Rule 12(b)(6) scrutiny because the Complaint "does not allege that any Dollar General employee actually prevented [Ms. Anderson] from completing a transaction" and, thus, the Complaint fails to allege the impairment of a contractual relationship for purposes of satisfying the third element.  (Def.'s Br., at 2 (Doc. # 8).)  It also asserts that, as to the second element, there are no allegations that "any Dollar General employee made a remark about [Ms. Anderson's] race."  (Def.'s Br., at 2.)  Ms. Anderson disagrees, arguing that the Complaint succinctly alleges facts establishing that Dolgencorp denied her "the same ability to purchase merchandise and access retail services as enjoyed by others based on [her] race."  (Pl.'s Resp., at 4 (Doc. # 12).) Binding precedent and persuasive authority are contrary to Ms. Anderson's position.  The analysis begins with the third element, followed by a discussion of the second element.

1.    *The Third Element*

The Eleventh Circuit's decision in *Lopez* provides a good starting point for examining the third element of Ms. Anderson's § 1981 claim.  In *Lopez*, which involved a § 1981 claim in the context of a retail transaction, the plaintiff, a Hispanic male, waited in the check-out line at a Target store to purchase his merchandise.  When he reached the front of the line, the white cashier rudely told the plaintiff that her register was closed.  As the plaintiff walked away, the cashier laughed at him and proceeded to assist the customer in line behind him.  *See* 676 F.3d at 1231–32.  Ultimately, after some delay, the plaintiff was able to purchase his merchandise at a different register.  *See id.* at 1232.  He sued Target, alleging that the cashier who refused to serve him "thwarted his § 1981 right to contract, notwithstanding the fact that [he] was ultimately able to purchase the items he wanted at the prices quoted by the store."  *Id.* at 1233.

The Eleventh Circuit held that the plaintiff failed to satisfy the third element of a § 1981 cause of action.  The plaintiff "was able to complete his transaction at the same Target store, buying his desired goods at the same price and using the same payment method as any other customer."  *Id.* at 1234.  The plaintiff was not "actually denied the ability . . . to make, perform, enforce, modify, or terminate a contract and cannot show the loss of an actual contract interest."  *Id.* (citation and internal quotation marks omitted).  "Fundamentally, [the plaintiff's] claim boils

6

down to the assertion that he was delayed and mistreated during the process of making his purchase. But this allegation, standing alone, cannot establish a § 1981 claim." *Id.* at 1235. The Eleventh Circuit concluded, "Because [the plaintiff] was able to make his desired purchase from Target, on the same terms available to any other customer, [the cashier's] discriminatory conduct did not impair [the plaintiff's] right to make contracts under § 1981." *Id.*

Although Ms. Anderson does not analyze *Lopez*, she points out a fact that arguably distinguishes her case from *Lopez.* She contends that the "grounds upon which her claim[ ] rest[s] is an assertion that Dollar General caused her to abandon her attempt to purchase merchandise (*i.e.*, to make a contract)." (Pl.'s Resp., at 6.) As stated, the Complaint does not allege whether Ms. Anderson purchased the merchandise before she left the store, but for purposes of argument only and based upon Ms. Anderson's representation, it will be assumed that she abandoned her purchase because of the humiliation she suffered as a result of the manager's comments. Dismissal nonetheless is required under the teachings of *Lopez* and persuasive authority from the Fifth and Seventh Circuits. *See Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003); *Bagley v. Ameritech Corp.*, 220 F.3d 518 (7th Cir. 2000).

In *Arguello*, the plaintiffs, a father and daughter both of Hispanic origin, entered a Conoco store to pay for gas and buy merchandise. The clerk was rude to

the daughter, but ultimately the daughter completed the transaction for the purchase of gas. The father became aggravated, however, about the treatment his daughter received and walked out of the store before completing his transaction, leaving his merchandise on the counter. *See* 330 F.3d at 356–57. The plaintiffs sued Conoco for racial discrimination under § 1981. The Fifth Circuit recognized that "where a customer has engaged in an actual attempt to contract *that was thwarted by the merchant*, courts have been willing to recognize a § 1981 claim." *Id.* at 358 (citation and internal quotation marks omitted). But the retailer must "actually prevent[ ] and not merely deter[ ]" the customer from making a purchase. *Id.* (citation and internal quotation marks omitted).

As to the father's § 1981 claim, the pertinent claim for purposes of the present analysis, the Fifth Circuit explained that, "[a]lthough [the father's] decision to abandon his purchase resulted from [the cashier's] mistreatment of his daughter, [the cashier] did not actually interfere with an attempted purchase." *Id.* at 359. Instead, the father voluntarily left on his own accord because he was frustrated. *See id.*; *see also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 471 (8th Cir. 2009) (citing *Arguello* for the proposition that "where a shopper abandoned his purchase due to a merchant's mistreatment of the shopper's daughter, the merchant did not 'actually interfere' with or 'thwart' an attempted purchase in a manner that violated § 1981" (quoting *Arguello*, 330 F.3d at 358–59)). Accordingly, the Fifth

8

Circuit held that the father had failed to establish that the cashier's conduct toward him implicated § 1981 rights.

Similarly, in *Bagley*, after the defendant's assistant manager refused to assist the Hispanic plaintiff with the purchase of a phone and made an obscene gesture with her middle finger, the plaintiff chose not to buy the phone from a different sales representative and instead walked out of the defendant's store. The Seventh Circuit reasoned, "While we do not fault [the plaintiff] for taking offense at [the assistance sales representative's] conduct . . . , her actions cannot be construed as anything more than a refusal to personally wait on [the plaintiff]." 220 F.3d at 521. The plaintiff "cut off his exchange – and thus the opportunity to buy the phone – by leaving the store." *Id.* The court held that, because the defendant was not responsible for terminating the transaction, there was no violation of § 1981. *See id.* at 522; *see also Lopez*, 676 F.3d at 1235 n.4 (citing *Bagley* with approval for the premise that the non-offending sales clerk's offer to assist the plaintiff "demonstrated that the store would have contracted with the plaintiff had he not abandoned his efforts to make a purchase"). *Cf. Gregory*, 565 F.3d at 471 (A merchant "blocks the creation of a contractual relationship" sufficient for purposes of § 1981 where it "asks a customer to leave [its] establishment." (citation and internal quotation marks omitted)).

Based upon the foregoing principles, the Complaint fails to allege facts that a Dollar General employee "actually prevented" Ms. Anderson from making a purchase. *Arguello*, 220 F.3d at 358; *see also Lopez*, 676 F.3d at 1235 (A "retail customer cannot make out a claim under § 1981 unless the customer was actually denied the ability to engage in [some] contractual activity protected by [§ 1981]." (citation and internal quotation marks omitted)).  To the contrary, the facts allege that the clerk who was assisting Ms. Anderson attempted to complete the transaction by "continu[ing] to swipe [her] EBT card."  (Compl. ¶ 12.)  The Complaint does not allege (and Ms. Anderson does not argue) that the failure of Ms. Anderson's admittedly "torn" EBT card to scan properly was an intentional act of interference by the clerk to thwart the transaction.  (Compl. ¶ 11.)  There also are no allegations that any store employee refused to try to complete the sales transaction – with either the EBT card or another form of payment – or required Ms. Anderson to leave the store.  Rather, the allegations, taken as true, demonstrate that Ms. Anderson decided to leave the store because she felt humiliated, and Ms. Anderson concedes that she abandoned her attempt to purchase the merchandise. (Pl.'s Resp., at 6.)

Ms. Anderson's reaction is understandable, as the manager's alleged remarks are offensive and inappropriate, but under the persuasive authority of *Arguello* and *Bagley*, the facts are insufficient to show that Dolgencorp impaired

10

Ms. Anderson's contractual rights by denying her the ability to enter into a retail transaction, even if, as alleged, the manager's remarks caused her much embarrassment. As in *Arguello* and *Bagley*, the allegations demonstrate that Ms. Anderson decided to leave the Dollar General store of her own choosing. Moreover, as established in *Lopez*, a cashier's mistreatment alone during the check-out process is insufficient to sustain a § 1981 claim. *See* 676 F.3d at 1235. Because Dolgencorp did not actually prevent Ms. Anderson from completing her retail transaction, the Complaint does not satisfy the third element of a § 1981 claim.

### 2.   *The Second Element*

"Section 1981 prohibits intentional *race* discrimination in the making and enforcement of . . . contracts." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) (emphasis added). Dolgencorp argues that the Complaint fails to allege that its store manager intended to discriminate on the basis of race when he told Ms. Anderson "to get a job." Dolgencorp contends that, at best, the remarks disparaged Ms. Anderson's economic status. As support for its argument, Dolgencorp cites *Hallmark Developers, Inc. v. Fulton County, Georgia*, 466 F.3d 1276 (11th Cir. 2006). Ms. Anderson does not counter Dolgencorp's arguments with respect to this element.

In *Hallmark Developers*, a race discrimination case brought under the Fair Housing Act, the Eleventh Circuit held that alleged remarks about the low price of certain proposed housing did not constitute evidence of racial bias:  "[The plaintiff] points to statements made at the hearings that it characterizes as 'subtle' statements of [racial] bias.  The statements to which it refers are objections to the proposed price of the housing.  They do not demonstrate racial animus.  They demonstrate class animus.  Wealth is not a proxy for race."  *Id.* at 1284.

Ms. Anderson's § 1981 claim rests on allegations that a Dollar General manager, who is white, told Ms. Anderson more than once that she should "get a job," rather than rely on an EBT card for sustenance.  Recipients of EBT cards qualify to receive food stamp benefits on the basis of impoverished income, not race, *see supra* note 2, and yelling "get a job" is not a comment that on its face is based on race.  Ms. Anderson does not point to any allegations in the Complaint from which it can be inferred that on this occasion, the manager made the comments because of Ms. Anderson's race.[5]  The § 1981 claim fails for the

---

[5] The Complaint contains allegations that on other unspecified occasions, unidentified individuals reported to Ms. Anderson that unnamed employees at arguably the same Dollar General store had made "racial slurs" to unnamed African-American customers.  (Compl. ¶ 23.) The Complaint does not state what the slurs were, but if these vague allegations represent the way that employees at this Dollar General store treat its African-American customers, that behavior is in no way condoned.  But these allegations nonetheless are insufficient to sustain an inference that on July 13, the manager's comment to Ms. Anderson to "get a job" was racially motivated.  The Complaint does not allege that this manager called Ms. Anderson a racially derogatory name, that this manager uttered racial slurs to any other customer on any other occasion, that this manager knew about but condoned other employees' use of racial slurs, or that

additional reason that there is an absence of allegations that Dolgencorp intended to discriminate against Ms. Anderson on the basis of race as required by the second element.

### 3.   *Summary*

For the foregoing reasons, the Complaint fails to plead facts sufficient to satisfy the second and third elements of a § 1981 claim.   Accordingly, Dolgencorp's motion to dismiss is due to be granted on Count One.

## B.   <u>Supplemental State-Law Claims (Counts Two and Three)</u>

Ms. Anderson's remaining claims are state-law claims.  A district court may decline to exercise supplemental jurisdiction over state-law claims when it has dismissed all claims over which it has original jurisdiction.   28 U.S.C. § 1367(c)(3).  While the decision to exercise supplemental jurisdiction is discretionary, the Eleventh Circuit "ha[s] encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

---

these other unidentified employees uttered the slurs in circumstances similar to those in which Ms. Anderson found herself.  *See generally Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (explaining the circumstances under which "me too" evidence is indicative of discriminatory intent).   *Cf. United Parcel Serv., Inc.*, No. 12cv1753-WMA, 2013 WL 5525972, at *12 (N.D. Ala. Oct. 4, 2013) (observing that "[d]iscrimination in the air, so to speak, will not do" and that "[i]t is discrimination in an employment action adverse to plaintiff that must be shown" (citation and internal quotation marks omitted)).   Even taken as true, unnamed Dollar General employees' racial slurs directed at other individuals on different occasions do not demonstrate that Ms. Anderson was the victim of racial discrimination on the day in question.

Exercising its discretion, the court declines to retain supplemental jurisdiction over the state-law claims.  These claims will be dismissed without prejudice should Ms. Anderson wish to refile them in state court.  *See* § 1367(d) (tolling "the period of limitations" on state-law claims while the claim is pending in federal court and "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

## V.  CONCLUSION

Based on the foregoing, Ms. Anderson's § 1981 claim in Count One is subject to dismissal under Rule 12(b)(6), and jurisdiction is declined over the state-law claims in Counts Two and Three.   Accordingly, it is ORDERED that Defendant's motion to dismiss (Doc. # 7) is GRANTED on Plaintiff's § 1981 claim (Count One).  It is further ORDERED that Defendant's motion to dismiss is DENIED as moot on Plaintiff's state-law claims (Counts Two and Three) and that the state-law claims are DISMISSED without prejudice pursuant to § 1367(c)(3).

An appropriate judgment will be entered separately.

DONE this 19th day of May, 2014.

_____
        /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE